UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


WELLS FARGO BANK, N.A.,

                         Plaintiff,

      v.

THE ASH ORGANIZATION, et al.,

                         Defendants.

No. CV-09-188-MO

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiff Wells Fargo filed this action to recover the unpaid balance of a promissory note and foreclose on the property that secures the note. Defendant Thunderbird, the promissor, filed an answer asserting several affirmative defenses, a counterclaim against Wells Fargo, and a third-party complaint against third-party defendants Bank of America, N.A., Bank of America Securities, LLC, Bank of America Corporation, Bank of America Commercial Mortgage, Inc. (collectively, "Bank of America"), Midland Loan Services, Inc., and Anthracite Capital, Inc. This matter comes before the Court on Midland's Motion to Dismiss Defendant's Third-Party Complaint (#67), Bank of America's Motion to Dismiss Third-Party Complaint (#74) and Supplemental Motion to Dismiss Third-Party Complaint (#83), and Wells Fargo's Motion to Dismiss Defendants' Counterclaim (#71). For the reasons discussed below, I DENY Midland's and Wells Fargo's motions to dismiss but GRANT Bank of America's motions to dismiss.

# BACKGROUND

Defendant and third-party plaintiff Thunderbird Mobile Club, LLC. ("Thunderbird")

owns land that was formerly used as a mobile home park. In April 2004, Thunderbird obtained a

six-million dollar loan from Bridger Commercial Funding LLC ("the Bridger Loan"). (Miner

Decl. (#69) Ex. A & B.) The loan was executed through a promissory note and deed of trust

encumbering Thunderbird's land (collectively, "the Loan Agreement"). (*Id.*) The Ash

Organization, Inc., another business entity owned by Thunderbird president Richard Ash,

guaranteed the loan ("the Limited Guaranty").[1] (Miner Decl. (#69) Ex. E.) Shortly after executing

the loan, Bridger sold the promissory note and deed of trust to Bank of America. (Miner Decl.

(#69) Ex. C & D.)

Bank of America packaged the Thunderbird loan with other several other loans through a

Pooling and Servicing Agreement ("PSA") that transferred the loans into a billion-dollar pool and

sold pieces of the pool to numerous investors. (Miner Decl. (#69) Ex. F; Third-Party Compl.

(#53) ¶ 20). The pooled loans were sold to Wells Fargo, in trust, and the PSA named Wells Fargo

as trustee. (Miner Decl. (#69) Ex. F at 1, 9, 11, 13.) The PSA also named Bank of America, N.A.

as "Master Servicer" and named Midland as "Special Servicer" and provided that the parties

would service the loans on behalf of Wells Fargo. (*Id.* at 14.) In their capacity as Master Servicer

and Special Servicer, respectively, Bank of America and Midland each had authority "to do or

cause to be done any and all things in connection with such servicing and administration which it

_____

[1]  The Ash Organization, Inc., the Richard Ash Revocable Living Trust, and Richard Ash
in his individual capacity are referred to collectively as "the Ash defendants."

may deem necessary or desirable." (*Id.* at 15.)**[2]**

After executing the loan, Thunderbird found itself embroiled in a legal battle with the City of Wilsonville over its use of its land. Unable to sell its property, Thunderbird lost tenants and revenue and began to worry about its ability to make payments on the Bridger Loan. Thunderbird eventually found a developer who was willing to purchase the land. The purchaser required eighteen months to close the deal, but was willing to pay Thunderbird $75,000 a month toward the purchase price until closing. Thunderbird planned to put the monthly payments toward the Bridger Loan. In order to execute the agreement, the purchaser required the purchase agreement to be secured by a lien on Thunderbird's property. Thunderbird approached Midland for consent to the secondary lien. Midland refused its consent, and the purchaser pulled out of the deal.

The Loan Agreement also provides that a certain portion of the loan should be held in reserve to be applied to land improvements. After its ill-fated attempt to sell the property, and in light of its increasingly limited cash flow, Thunderbird asked Midland to apply those reserves to its outstanding loan payments. Midland refused.

Thunderbird subsequently failed to make payments on the loan, and Wells Fargo filed this action to recover the unpaid balance under the promissory note and to foreclose on Thunderbird's property. Thunderbird counterclaimed against Wells Fargo and filed a third-party complaint

---

[2]  Neither Thunderbird nor the Ash defendants were a party to the PSA; therefore, neither has standing to assert contract rights under the PSA. To the extent that Thunderbird's third-party complaint states a claim or affirmative defense for breach of contract for failure to comply with the terms of the PSA, those claims and defenses are dismissed. The Court also grants Bank of America's motion to strike Paragraphs 47-50 of the third-party complaint (Mem. in Support of Mot. to Dismiss (#75) 11-13), which allege breaches of the PSA.

against Midland, Anthracite and Bank of America, alleging, in relevant part, that these parties breached the terms of the Loan Agreement or unreasonably interfered with the Loan Agreement by refusing Thunderbird's requests.[3] Midland, Wells Fargo, and Bank of America filed motions to dismiss, which are now before the Court.

## DISCUSSION

### I.    Standard of Review

When analyzing a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the court must accept as true the factual allegations contained in the complaint and construe them in the light most favorable to the plaintiff. *Mishler v. Clift*, 191 F.3d 998, 1002 (9th Cir. 1999). Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.* "The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to *offer* evidence to support the claims." *Cervantes v. City of San Diego,* 5 F.3d 1273, 1274-75 (9th Cir. 1993) *(*quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)) (emphasis in the original).

Generally, Rule 12(b)(6) does not permit a court to consider evidence beyond the pleadings. *See* Fed. R. Civ. P. 12(d). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." A court may, however, consider "documents whose contents are alleged in a complaint and whose authenticity no party questions" without transforming a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of*

---

[3]  Thunderbird later clarified that "Midland is the only party against which the Defendants allege an interference with contract claim." (Combined Mem. of Defs. (#87) 9.)

*Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Because neither the Loan Agreement nor the PSA is attached to the third-party complaint, these documents are evidence outside the pleadings. These agreements are referenced throughout the complaint, however, and neither party questions their authenticity.[4] (*See* Dickas Aff. (#8); Miner Decl. (#69).) Therefore, I may consider both documents without transforming defendants' motions to dismiss into motions for summary judgment.

## II.    Claims by the Ash Defendants

Thunderbird and the Ash defendants collectively assert four affirmative defenses against Wells Fargo. The third-party complaint and counterclaim incorporate the same set of factual allegations that give rise to these affirmative defenses. Because the third-party complaint and counterclaim overlap with the affirmative defenses, it is difficult to tell whether the counterclaim and third-party claims are asserted by Thunderbird only or by Thunderbird and the Ash defendants together.

The third-party complaint and counterclaim both allege breach of the Loan Agreement, or, in the alternative, intentional interference with the Loan Agreement. Thunderbird and the Ash defendants are both parties to the Limited Guaranty, but only Thunderbird is a party to the Loan Agreement itself. Therefore, to the extent that the Ash defendants assert breach of contract and intentional interference claims arising out of the Loan Agreement, those claims are dismissed.

---

[4] Midland's reply also includes a copy of an agreement between Wells Fargo and Midland that grants Midland limited power of attorney. (Reply (#93) Ex. H.) Documents granting Midland limited power of attorney are not referenced in the third-party complaint, and the Court will not consider Exhibit H at this time. Because the Court did not consider Midland's Exhibit H, Thunderbird's motion to strike this exhibit (#101) is DENIED AS MOOT.

III.    <u>**Midland's Motion to Dismiss**</u>

Midland's Motion to Dismiss (#67) challenges Thunderbird's claim for tortious interference with the Loan Agreement on two main grounds. First, Midland argues that Thunderbird's claims for breach of contract and tortious interference are fundamentally inconsistent. In light of that inconsistency, Midland argues that the tortious interference claim must be dismissed because Midland is indisputably an agent of Wells Fargo and therefore a party to the Loan Agreement with Thunderbird. Second, Midland argues that Thunderbird has failed to plead the essential elements of a tortious interference claim. For the reasons stated below, I deny Midland's motion.

A.    *Inconsistent Claims and Midland's Relationship with Wells Fargo*

Midland argues that Thunderbird's claim for tortious interference with the Loan Agreement must be dismissed because it is inconsistent with Thunderbird's claim for breach of the Loan Agreement. Although the Court recognizes that an entity cannot interfere with a contract to which it is a party, *Boers v. Payline Sys.*, 918 P.2d 432, 435 (Or. App. 1996), Rule 8(d)(3) allows a party to "state as many separate claims or defenses it has, regardless of consistency." At this early stage in the proceedings, inconsistency alone is not grounds for dismissing either of Thunderbird's claims if unknown and disputed facts about Midland's agency status make both of Thunderbird's claims viable. Therefore, the issue before the Court is not whether Thunderbird's claims are inconsistent but rather whether Midland's agency status is clear on the face of the complaint.

Midland has not been assigned rights under the Loan Agreement, but it would be considered a party to the Loan Agreement if it acted as an agent of Wells Fargo. Under Oregon

law, agency exists where the principal and agent have agreed that the agent will act on the

principal's behalf and subject to the principal's control. *Miller v. D.F. Zee's, Inc.*, 31 F. Supp. 2d

792, 806 (D. Or. 1998) (citing *Larrison v. Moving Floors, Inc.*, 873 P.2d 1092 (Or. App. 1994)).

"An agency relationship may be evidenced by an express agreement between the parties, or it

may be implied from the circumstances and conduct of the parties." *Id.* (citing *Cain v. Rijken*,

717 P.2d 140 (Or. 1986)).

      Midland asserts that the PSA indisputably establishes it as an agent of Wells Fargo and

therefore a party to Wells Fargo's Loan Agreement with Thunderbird. But the PSA is not clear on

this issue. One section of the PSA expressly contradicts Midland's assertion that it is an agent of

Wells Fargo:  "The relationship of . . . the Special Servicer to the Trustee . . . is intended by the

parties to be that of an independent contractor and not that of a joint venturer, partner, or agent."

(Miner Decl. (#69) Ex. F at 15.) At the same time, however, the PSA uses language that could

create an agency relationship. For example, the PSA requires Midland to service loans "on behalf

of" Wells Fargo and grants Midland the authority "to do or cause to be done any and all things in

connection with such servicing and administration with it may deem necessary or desirable . . . ."

(*Id.*)

      In light of the inconsistent language of the PSA, I reject Midland's argument that it is

clearly an agent of Wells Fargo on the face of the third-party complaint. The nature of the

relationship between Midland and Wells Fargo will likely require evidence of conduct

unavailable on the current record. Thunderbird may state inconsistent claims of tortious

interference and breach of contract, as allowed by Rule 8(d)(3), unless and until Midland's

agency status is clarified.

**B.    *Failure to State a Claim for Intentional Interference***

Midland also argues that the claim for tortious interference should be dismissed because Thunderbird fails to set forth the claim's essential elements. Viewing the allegations in the light most favorable to Thunderbird, I find that Thunderbird has pleaded each element of its cause of action and is entitled to set forth proof of its claims.

To state a claim for intentional interference with a contract under Oregon law, a plaintiff must allege (1) the existence of a contractual relationship; (2) intentional interference with that relationship; (3) by a third party; (4) for an improper means or improper purpose; (5) a causal effect between the interference and the harm to the plaintiff's contractual relationship; and (6) damages. *Nw. Natural Gas Co. v. Chase Gardens, Inc.*, 982 P.2d 1117, 1123-24 (Or. 1999).

Thunderbird alleges the existence of a contractual relationship between itself and Wells Fargo, who had become the "nominal holder" of the loan. (Third-Party Compl. (#53) ¶ 20.) The third-party complaint alleges that Midland intentionally, arbitrarily and wrongfully withheld its consent to Thunderbird's reasonable requests in a manner that violated the terms of the Loan Agreement. (*Id.* ¶¶ 30-33; 36-37.) Midland allegedly refused its consent in order to profit from Thunderbird's loan reserves and force a foreclosure of Thunderbird's property.[5] (*Id.* ¶ 37.) As a consequence of this wrongful refusal, Thunderbird alleges that was unable to complete a sale of

---

[5] Although maximizing profit is not an improper purpose, *Eusterman v. Nw. Permanente, P.C.*, 129 P.3d 213, 221 (Or. App. 2006), a party may still be liable for tortious interference if it maximizes profits through an improper means. *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 582 P.2d 1365, 1369-70 (Or. 1978) ("[E]ven when defendant's objectives are not improper, for instance the pursuit of competition or other legitimate interests, defendant may still be liable for using improper means to achieve these objectives."). Viewing the allegations in the light most favorable to Thunderbird, Thunderbird alleges that Midland maximized its profits by misrepresenting and exploiting its authority as Special Servicer of the loan. (*See* Third-Party Compl. (#53) ¶¶ 31, 37.)

its property or otherwise obtain the funds necessary to continue paying its obligations under the Loan Agreement. (*Id.* ¶¶ 33, 37). Viewing these allegations in the light most favorable to Thunderbird, I find that Thunderbird has stated a claim for intentional interference against Midland sufficient to survive a Rule 12(b)(6) motion to dismiss. Therefore, Midland's Motion to Dismiss (#67) is denied.

## IV.    Counterclaims Against Wells Fargo

For the reasons discussed above, Midland's relationship to Wells Fargo is unclear on the face of the complaint. Therefore, Wells Fargo could still be held liable for Midland's actions based on a theory that Midland acted as an agent of Wells Fargo.[6] The Court acknowledges that Thunderbird's counterclaim focuses disproportionately on Wells Fargo's lack of control over Midland, alleging that Wells Fargo has "no right or authority" under the Loan Agreement (Third-Party Compl. (#53) ¶ 1); is not the lawful owner and holder of Thunderbird's promissory note (*id.* ¶ 3); is "little more than a nominal holder of the pooled notes and mortgages, without meaningful authority to manage or to enforce them" (*id.* ¶ 20); and does not control Midland's discretion in servicing the loans (*id.*). But although Wells Fargo cannot be held liable for breach of contract if it lacked authority to enforce the loan agreement, the inconsistent nature of allegations is not, in and of itself, a sufficient reason to dismiss the counterclaim. *See* Fed. R. Civ. P. 8(d)(3). Therefore, Wells Fargo's Motion to Dismiss (#71) is denied.

---

[6] Midland and Wells Fargo share the same legal counsel. Therefore, when Wells Fargo's counsel argues vehemently that Midland is an "agent of" and "acts on behalf of" Wells Fargo (Mem. in Supp. of Midland's Mot. to Dismiss (#68) 2, 3, 5, 10, 11, 13), counsel cannot contend in good faith that Wells Fargo has no notice of the legal theory under which Midland's conduct gives rise to a breach of contract claim against Wells Fargo.

## V.    Bank of America's Motions to Dismiss

Thunderbird asserts breach of contract claims against Bank of America, N.A., Master Servicer of its loan, as well as Bank of America Commercial Mortgage, Inc., Bank of America Securities, LLC, and Bank of America Corporation. I find that the third-party complaint does not allege facts sufficient to (A) state an affirmative defense or equitable third-party claim of unclean hands against Bank of America, or (B) state a breach of contract claim against Bank of America. I therefore grant Bank of America's motion to dismiss.

### A.    *Unclean Hands*

A substantial portion of Thunderbird's third-party complaint is devoted to describing Bank of America's lending practices, which, according to Thunderbird, "caused" the United States' current recession. (Third-Party Compl. (#53) ¶¶ 16-26, 35, 52.) The allegations are raised as both an affirmative defense to Thunderbird and the Ash defendants' obligations under the Loan Agreement, Loan Guaranty, and Promissory Note, and as a basis for a third-party complaint against Bank of America.

Thunderbird and the Ash defendants do not have Article III standing to assert a claim against Bank of America for financial losses attributable to the recession. In order to establish standing, a plaintiff must show an injury in fact, fairly traceable to the defendant's conduct, which is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Although Thunderbird and the Ash defendants may have suffered financial losses in the recession, the causes of the recession are so numerous that defendants' losses are not fairly traceable to Bank of America's lending practices alone.

I reach the same conclusion by analyzing the third-party complaint under Rule 12(b)(6).

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). I find Thunderbird and the Ash defendants' claim that "[t]he disruption and cessation of mortgage lending [in the United States] was caused by the inordinately reckless, imprudent, and misleading lending, pooling, and marketing practices of B of A, its parents and affiliates" to be implausible on its face. (Third-Party Compl. (#53) ¶ 52.) Even accepting as true the allegation that Bank of America engaged in reckless lending practices, there is no set of facts that Thunderbird and the Ash defendants could offer to prove that Bank of America's conduct is a but-for or proximate cause of the United States' economic recession. Therefore, I GRANT Bank of America's Rule 12(b)(6) motion to dismiss with respect to this claim and affirmative defense. I also GRANT Bank of America's Rule 12(f) motion to strike paragraphs 21-26 and 51-52 (Mem. in Supp. of Mot. to Dismiss (#75) 2, 11-13), as these paragraphs are relevant only to the equitable unclean hands claims that are now dismissed. Thunderbird's Motion to Compel Answers to Interrogatories (#98) is also related to these dismissed claims; therefore, that motion is DENIED AS MOOT.

**B.    *Breach of Contract Claim Against Bank of America.***

The Bank of America defendants move to dismiss Thunderbird's claims against them for breach of contract. I GRANT Bank of America's Motion to Dismiss (#74) because Thunderbird's complaint fails to allege facts that explain the basis for Bank of America's liability.[7]

---

[7] Bank of America also filed a supplemental Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction (#83). Although a court must consider jurisdictional issues before reaching the merits of a claim, Bank of America waived a lack of personal jurisdiction defense by failing to raise the defense in its first preanswer motion. Fed. R. Civ. P. 12(h). I therefore consider Bank of America's motion to dismiss for failure to state a claim under Rule 12(b)(6) (#74) and DENY

Although the third-party complaint discusses, at great length, Bank of America's role in creating the mortgage crisis and the United States' recession, the third-party complaint does not allege that Bank of America injured Thunderbird directly. With respect to a breach of contract claim against Bank of America, the third-party complaint alleges only that Bank of America transferred loans to Midland for administration (Third-Party Compl. (#53) ¶ 20); that Midland refused to forward Thunderbird's loan servicing requests to Bank of America (*id.* ¶ 31); that Bank of America engaged in "wrongful, unauthorized conduct" (*id.* ¶ 37); that Bank of America "wrongfully, arbitrarily and unreasonably refused and obstructed Thunderbird's offer of payment in violation of the loan agreement" (*id.* ¶ 45); and that Bank of America engaged in "breaches of the [Loan Agreement] and unreasonable, wrongful, reckless, misleading and inequitable conduct." (*id.* ¶ 54).

There is no allegation that Bank of America breached the Loan Agreement in a manner separate from, and independent of, Midland's actions. Therefore, the complaint must allege facts that, if true, would support a claim that Bank of America is liable for the actions of Midland. The allegation that Bank of America transferred the loans to Midland for administration is not, in and of itself, sufficient to establish liability through an agency relationship or some other means. As Thunderbird has observed, the key elements of agency are the principal's consent to be represented by the agent and the degree of control that the principal exercises over the agent's actions. (Third-Party Pls.' Resp. (#87) 3); *Miller*, 31 F. Supp. 2d at 806. The third-party complaint contains no allegation that Bank of America consented to be represented by Midland or that Bank of America exerted control or influence over Midland's actions. The breach of

_____

AS MOOT Bank of America's Supplemental Motion to Dismiss (#83).

contract claims against Bank of America are therefore dismissed.

## CONCLUSION

For the foregoing reasons, I GRANT Bank of America's Motions to Dismiss (#74). I DENY Midland's Motion to Dismiss (#67), Wells Fargo's Motion to Dismiss (#71), and Thunderbird's Motion to Compel (#98). I DENY AS MOOT Bank of America's Supplemental Motion to Dismiss (#83) and Thunderbird's Motion to Strike (#101).

IT IS SO ORDERED.

DATED this __8th__ day of ____December____, 2009.

/s/ Michael W. Mosman____
MICHAEL W. MOSMAN
United States District Court

-13-