UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**WELLS FARGO BANK, N.A.**,

No. CV-09-188-MO

Plaintiff,

OPINION AND ORDER

v.

**THE ASH ORGANIZATION, et al.**,

Defendants.

**MOSMAN, J.,**

Plaintiff Wells Fargo Bank, N.A. and third-party defendants Bank of America, N.A. and

Midland Loan Services, Inc. seek to strike defendants' allegation that Wells Fargo lacks authority

to bring this foreclosure action against them. Defendants' lack of authority counterclaim is

premised on the provisions of the Pooling and Servicing Agreement ("PSA") between Bank of

America, Midland, and Wells Fargo, which creates a trust composed of pooled mortgage loans

and conveys right, title, and interest in the loans to Wells Fargo as trustee. Defendants allege that

the PSA strips Wells Fargo of the traditional powers that a trustee possesses at common law,

while at the same time requiring certain procedural prerequisites to foreclosure—including the

consent of the Directing Certificateholder. According to defendants' theory, Wells Fargo lacks

authority to bring this lawsuit in part because Midland failed to obtain authorization from the

Directing Certificateholder before commencing this foreclosure action. Wells Fargo counters that it is the true plaintiff in this action by virtue of its right, title, and interest in defendants' loan documents. Having previously held that Wells Fargo is the real and substantial plaintiff for purposes of this litigation, and finding no reason to reconsider that decision, I grant plaintiff's and third-party defendants' motion.

## BACKGROUND

On April 16, 2004, defendant Thunderbird Mobile Club, LLC, obtained a six-million-dollar loan from Bridger Commercial Funding, LLC. To obtain the loan, Thunderbird executed a promissory note payable to Bridger and secured by a deed of trust encumbering Thunderbird's property. Mr. Ash and the Ash Organization (collectively referred to as "the Ash defendants") were not parties to the loan agreement but executed a Limited Guaranty on the loan. The promissory note and deed of trust (collectively referred to as "the Loan Agreement") were later assigned to Bank of America, which packaged the Thunderbird loan with several other loans and sold the billion-dollar pool to Wells Fargo in trust, naming Wells Fargo as trustee. This pooling arrangement is governed by an agreement referred to as the PSA. As trustee, Wells Fargo holds right, title, and interest in the pooled loans, including the Thunderbird loan agreement. The PSA names Bank of America as "Master Servicer" of the pool and Midland as "Special Servicer," and grants these entities certain powers with respect to servicing the loans in the pool. Another entity, Anthracite Capital, Inc., is alleged to be the "Directing Certificateholder" of the pool.

In February 2009, Wells Fargo sued Thunderbird and the Ash defendants for breach of the Limited Guaranty Agreement. (Compl. (#1)). The complaint alleges that Thunderbird defaulted on the Loan Agreement held by Wells Fargo and seeks to foreclose on the deed of trust.

-2-

Wells Fargo amended its complaint as a matter of right in March 2009 (First Am. Compl. (#4)),

and filed a second amended complaint with leave of the Court on September 8, 2009 (Second

Am. Compl. (#65)).

In April 2009, defendants filed a Motion for an Order Pursuant to ORS 9.350 Requiring

Plaintiff's Attorneys to Prove the Authority Under Which They Appear and Defendants'

Suggestion that this Court Lacks Jurisdiction (#9). The motion, essentially a motion to dismiss

for lack of subject matter jurisdiction, relied on a theory that the PSA stripped Wells Fargo of a

trustee's traditional powers at common law. The motion argued that Wells Fargo was a "mere

title holder" rather than a proper party in interest, and its citizenship did not determine citizenship

for purposes of diversity jurisdiction under 18 U.S.C. § 1332. (Mem. in Supp. (#10) 2-3.)

Relying primarily on *Navarro Savings Ass'n v. Lee*, 446 U.S. 458 (1980), defendants asserted

that jurisdiction must be determined by looking to the citizenship of the "true beneficiaries," or

the certificateholders of the pooled loans. (*Id.* at 3-4.)

At oral argument held on June 19, 2009, I denied defendants' motion. I found that the

controlling principle for purposes of determining the real party in interest was the right, title, and

interest in the loan agreement. Because it is undisputed that Wells Fargo holds right, title, and

interest in the Thunderbird Loan Agreement, I found that Wells Fargo is "the real and substantial

party for purposes of this litigation." (Hr'g Tr. 27:15-18.)

After the hearing, defendants filed an answer, affirmative defenses, a counterclaim

against Wells Fargo, and a third-party complaint against Bank of America, Midland, and another

entity, Anthracite Capital, Inc. (#53). Defendants' pleadings stated claims for breach of contract

against Bank of America, Wells Fargo, Midland, and Anthracite, and stated a claim for tortious

interference with contract against Midland, and alleged that Wells Fargo was not the real and substantial party in interest for purposes of this litigation (*see id.* at ¶ 1). These claims were based primarily on two types of conduct by Midland: (1) refusal to consent to second liens on the property, when consent would have allowed defendants to sell the property and pay back the loan, and (2) refusal to consent to release impounded loan funds held in reserve for improvements to the land, when the impound funds were no longer needed for improvements to the land and consent to their release would have kept the loan payments current.

Defendants' filed amended pleadings on December 29, 2009. The amended pleadings renewed the claim that Midland unreasonably refused to consent to second liens and to the release of impounds, as well as defendants' theory that Wells Fargo lacks authority to bring this lawsuit. (First Am. Answer (#133).) Specifically, the third-party complaint and counterclaim allege that this case should be dismissed because Midland failed to obtain authorization from Anthracite before commencing this foreclosure action (*id.* at ¶¶ 32-33, 48), because Midland obtained authorization from Anthracite through fraudulent representations and omissions (*id.* at ¶ 34), or because Anthracite wrongfully, unreasonably, and arbitrarily authorized the foreclosure in breach of the Thunderbird Loan Agreement (*id.* at ¶ 36).

In January 2010, Anthracite renewed its motion to dismiss for lack of personal jurisdiction and failure to state a claim (#137), and Midland, Bank of America, and Wells Fargo filed a motion to strike defendants' lack of authorization defense ("Wells Fargo's motion") (#139). At oral argument held on March 9, 2010, I granted Anthracite's motion to dismiss for personal jurisdiction on the ground that defendants' theory of purposeful availment depended on the consent provisions of the PSA, and the PSA does not require active authorization of a

foreclosure action. Rather, the PSA provides that the Special Servicer shall not commence a foreclosure action if the Directing Certificateholder objects within ten business days of receiving notice, and approval is presumed in the absence of the Directing Certificateholder's objection. PSA § 3.21(e).[1] With respect to personal jurisdiction over Anthracite, I found that the "negative" consent provided for under the PSA was insufficient to constitute personal availment and comport with notions of due process. In the event that further discovery would yield evidence that Anthracite was somehow actively involved in authorizing this foreclosure action, an event defendants themselves consider unlikely, I would have granted Anthracite's motion to dismiss for failure to state a claim because the only claim stated against Anthracite is a claim for breach of the Thunderbird Loan Agreement to which Anthracite is not, and has never been, a party. (*See* Am. Answer (#133) ¶¶ 36, 44, 47.)

During the same hearing, I construed Wells Fargo's motion as a motion to dismiss under Rule 12(b)(6). I took the motion under advisement on that basis, and granted defendants leave to file supplemental briefing with particular focus on distinguishing the claim they now raise from my prior ruling in June 2009. I now consider whether defendants may state a claim that Wells Fargo lacks authority to bring this lawsuit.

### DISCUSSION

## I.    Legal Standard

Under Rule 12(b)(6), the court must accept as true the factual allegations contained in the

---

[1] Citations to PSA § ___ refer to provisions of the July 1, 2004 Pooling and Servicing Agreement between Wells Fargo, Midland and Bank of America, all three hundred pages of which can be found in an attachment to the Declaration of William Dickas in Support of Motion to Prove Authority and Suggesting Lack of Jurisdiction (#22).

complaint and construe them in the light most favorable to the plaintiff. *Mishler v. Clift*, 191 F.3d 998, 1002 (9th Cir. 1999). Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.* "The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to *offer* evidence to support the claims." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274-75 (9th Cir. 1993) *(*quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) (emphasis in the original).[2]

As a threshold matter, defendants assert that Rule 12(b)(6) requires the court to accept as true certain allegations in defendants' answer, counterclaims and third-party complaint, including the allegations (1) that Midland has no right to initiate and direct this action without the approval and consent of Anthracite Capital Inc., and (2) that Wells Fargo "has no authority to control or direct any of the activities or conduct of [M]idland, Bank of America, and Anthracite with respect to the management or enforcement of the Bridger note, or with regard to this action." (Supplemental Mem. (#172) 7.)

This argument misapplies the relevant legal standard. Although the Court "must take all the <u>factual</u> allegations in the complaint as true" for purposes of analyzing a motion to dismiss, "[the court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (emphasis added); *see also Iqbal v. Ashcroft*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. . . . In keeping with

---

[2] Generally, Rule 12(b)(6) does not permit a court to consider evidence beyond the pleadings; however, I may consider both the Loan Agreement and the PSA at this stage of the proceedings because both documents are referenced throughout the complaint and no party questions the documents' authenticity. (*See* Op. & Order (#117) 4-5.)

these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Wells Fargo's authority to bring this action, or its lack thereof, is a legal conclusion that I am not bound to accept as true. I do, however, accept as true the factual allegations that form the foundation of defendants' claim—specifically, the allegation that Wells Fargo lacks meaningful control over the actions of Midland and that Midland failed to obtain authorization from Anthracite before commencing this foreclosure action.

## II.    <u>Standing</u>

At various stages of this litigation, Wells Fargo and the third-party defendants have challenged defendants' standing to assert claims based on alleged failure to comply with the provisions of the PSA. In its first motion to dismiss, Wells Fargo and the third-party defendants argued, and this Court held, that defendants lack standing to state a claim for breach of contract under the PSA because defendants are neither parties to, nor third-party beneficiaries of that agreement. Similarly, defendants are not beneficiaries of the trust created by the PSA, and therefore lack standing to sue Wells Fargo to enforce the trust. *See* Restatement (Second) Trusts § 200 (2009) ("No one except a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust."). In sum, I agree with Wells Fargo, Midland, and Bank of America's standing arguments to the extent these parties seek to prevent defendants from asserting rights that are created by the PSA.

But although defendants' claim relies on the terms of the PSA, it is not accurate to say that their challenge to Wells Fargo's authority to sue is based solely on rights created by the PSA. Rather, defendants' standing also depends on their status as defendants in this action and is based

on Rule 17(a)(1), which requires that every action be "prosecuted in the name of the real party in interest." Therefore, I find defendants have standing to challenge Wells Fargo's authority to sue, to the extent that defendants' challenge is based on Wells Fargo's Rule 17 authority as the real party in interest, rather than rights created by the PSA.

## III.    Failure to State a Claim

When I granted defendants' leave to file supplemental briefing, I asked defendants to explain why their claim is not foreclosed by my June 19, 2009 ruling that Wells Fargo is "the real and substantial party for purposes of this litigation" by virtue of its undisputed status as holder of right, title, and interest in the Thunderbird Loan Agreement. (*See* Hr'g Tr. 27:15-18.) They have not done so. That failure highlights a critical flaw in defendants' argument:  There can be no legitimate challenge to Wells Fargo's authority to sue if that authority is based on Wells Fargo's right, title, and interest in the Loan Agreement, as opposed to any authority created by complying with procedural mechanisms of the PSA. (*See* Second Am. Compl. (#65) Exs. 6, 7 (granting the holder of the Loan Agreement the powers of a secured party under the UCC, including the power to foreclose on the property secured by the Loan Agreement).) Because I previously held that plaintiffs' right, title, and interest in the loan agreement is the controlling fact with respect to Wells Fargo's authority to sue, I grant Wells Fargo's motion on that basis and take this opportunity to explain my reasoning further.

Rule 17(a) provides that "a trustee of an express trust" is a real party in interest for procedural purposes. *Navarro* clarified "that a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." 446 U.S. at 464. The Court concluded that the

trustees in *Navarro* did have such "customary powers" because the trust agreement authorized the trustees "to take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees." *Id.* In contrast, the trust beneficiaries were not the real party in interest because they "had no voice in the initial investment decision. . . . They can neither control the disposition of this action nor intervene in the affairs of the trust except in the most extraordinary situations." *Id.* at 464-65.

Although this issue is one of first impression in the Ninth Circuit, several other courts have applied *Navarro* to loans that, like the Thunderbird loan, have been securitized. These courts have uniformly held that the trustee of the securitized loans is the real party in interest in an action involving enforcement of the trust assets. In the Southern District of New York, on facts very similar to those of this case, the defendant argued that the Special Servicer of the pooled loans was the real party in interest, not the trustee, because the PSA granted the Special Servicer the power to initiate litigation with respect to defaulted loans and did not expressly authorize the trustee to prosecute claims that had been referred to the Special Servicer. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 180 F. Supp. 2d 465, 470 (S.D.N.Y. 2001). The court rejected defendant's argument, concluding that the trustee's right, title, and interest in the pooled loans granted it the power to bring suit and protect the value of the trust assets, while "the mere fact that the PSA assigns certain duties to [the Special Servicer] in connection with maximizing recovery of defaulted loans does not affect the basic premise . . . that a trustee of an express trust is the real party in interest when suing on behalf of that trust." *Id.* at 471. A district court for the District of Maryland reached the same conclusion on virtually identical facts. *LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings, Inc.*, 237 F. Supp. 2d 618, 631-33 (D. Md.

-9-

2002).

The PSA indisputably grants Wells Fargo legal title to the trust assets and the power to sue and be sued in its capacity as trustee. PSA § 2.01(b) ("The Depositor . . . does hereby transfer, assign, sell, set over and otherwise convey to the Trustee, in trust, . . . *all* the right, title and interest" in the mortgage loans and associated documents) (emphasis added). On similar facts, other courts found the right, title, and interest in the loans granted the trustee the power to enforce the trust assets. *See Nomura*, 180 F. Supp. 2d at 471 (holding that the "plain meaning" of the PSA terms that convey "*all* the right, title and interest" in the mortgages to the trustee "ordinarily includes the power to bring suit to protect and maximize the value of the interest granted thereby," regardless of the provisions of the PSA that "assign[ ] certain duties to [the Special Servicer] in connection with maximizing recovery of defaulted loans") (emphasis in original); *accord Lehman Bros.*, 237 F. Supp. 2d at 633.

Beyond the persuasive authority from other districts, an independent analysis of the PSA demonstrates that Wells Fargo has retained its common law powers to bring suit to protect the value of trust assets. Defendants argue, as they did in June 2009, that the PSA "expressly withholds all common law, statutory and implied powers and responsibilities" from Wells Fargo, which includes the authority to collect on trust assets. (Supplemental Mem. (#172) 4 (citing PSA § 8.01(c)).) In other words, defendants' argument depends on an assumption that the PSA strips Wells Fargo of the legal rights and powers it would otherwise enjoy by virtue of its legal title to the trust assets.

Defendants' interpretation of the PSA does not withstand scrutiny. The express language of the PSA limits only Wells Fargo's duties and obligations, not its rights and powers. The

-10-

relevant provision of the PSA provides that "[t]he duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, [and] the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement." PSA § 8.01(c)(i) (emphasis added). But with respect to Wells Fargo's rights and powers, the same section of the PSA provides: "If an Event of Default hereunder occurs and is continuing, the Trustee shall exercise such of the rights and powers vested in it by this Agreement and applicable law, and use the same degree of care and skill in their exercise as a prudent man or the Trustee would exercise or use under the circumstances in the conduct of his or its own affairs." PSA § 8.01(a) (emphasis added).

I acknowledge that a "trustee may be forbidden by the terms of the trust, either in specific words or otherwise, to exercise powers which but for such prohibition he could properly exercise, because they would otherwise be regarded as necessary or appropriate to carry out the purposes of the trust." Restatement (Second) Trusts § 186 cmt. d (2009). Theoretically, then, a trust agreement could be drafted such that it prevents the trustee from collecting on trust assets. But to prove that Wells Fargo's powers are limited in this respect, defendants must point to language of the PSA that expressly or implicitly prohibits Wells Fargo from exercising the powers of enforcement it would otherwise have. Here again, the language of PSA directly contradicts defendants' interpretation. Defendants assert that only the Special Servicer has authority to enforce the collection of a trust asset, "and only then if the Directing Certificateholder consents."[3] (Supplemental Mem. (#172) 5 (citing PSA § 3.21).). Although PSA

_____

[3] The PSA may not even require the Directing Certificateholder's consent to foreclosure. Under the PSA, the Directing Certificateholder has the right to receive notice of and object to a Special Action within 10 days, and "the Special Servicer shall not take any special Action if the

§ 3.21 does grant Midland the authority to initiate "Special Actions," including foreclosure, there is no specific language in that provision or others that grants foreclosure authority <u>exclusively</u> to Midland, or expressly <u>prohibits</u> Wells Fargo from exercising such authority. Instead, the PSA delegates loan servicing authority to Midland, who acts <u>on behalf of</u> Wells Fargo as trustee. *See* PSA § 3.01(a) ("[T]he Special Servicer shall service and administer the Loans . . . that it is obligated to service and administer pursuant to this Agreement on behalf of the Trustee."). By way of analogy, if an apartment owner has delegated his eviction authority to an apartment manager, that delegation alone would not deprive the apartment owner of his own inherent eviction authority. *See Lehman Bros.*, 237 F. Supp. 2d at 633 ("Merely because the PSA in this case delegates to [the Special Servicer] the right to institute a suit . . . does not affect the basic premise that the trustee of an express trust is the real party in interest . . . . That [the Special Servicer] and [the Trustee] each have the authority to institute suit does not negate the right of [the Trustee] to so act.").

Other provisions of the PSA provide further evidence that Wells Fargo has retained its inherent powers to enforce and collect on trust assets as holder of the promissory note and deed of trust. The PSA requires Midland to obtain a limited power of attorney from Wells Fargo before initiating a lawsuit, which necessarily implies that the PSA considers Wells Fargo to have retained legal authority with respect to the trust assets. *See* PSA § 3.01(b) ("[T]he Trustee shall . . . . [furnish] any limited powers of attorney and other documents . . . necessary or appropriate to

---

Directing Certificateholder . . . has objected." PSA § 3.21(e). But if the Directing Certificateholder and the Special Servicer "together cannot agree upon a course of action with respect to any Special Action, then the Special Servicer . . . shall implement its proposed course of action." *Id.*

enable it to carry out its servicing and administrative duties."); PSA § 3.10 (stating that, in the context of a foreclosure action, the Trustee may execute a power of attorney in favor of the Special Servicer that empowers the Special Servicer to act on behalf of the Trustee). If the PSA stripped Wells Fargo of its authority to enforce the trust assets, it would be unnecessary for Wells Fargo to execute a power of attorney in favor of Midland.

Therefore, as I held in June 2009, Wells Fargo is the real party in interest to this controversy because Wells Fargo has legal title to the trust assets and possesses "certain customary powers to hold, manage, and dispose of [trust] assets for the benefit of [the Certificateholders]." *See Navarro*, 446 U.S. at 464. Because Wells Fargo's right, title, and interest in the loans is the controlling fact that makes it the real party in interest for purposes of Rule 17, the issue of whether Midland obtained the Directing Certificateholder's consent before initiating a foreclosure action is not relevant for our purposes. The PSA's consent provision is one of the many rights and procedural mechanisms created by the PSA, and compliance, or non-compliance, with those provisions does not affect Wells Fargo's right, title and interest in the loan documents. Because the well-pleaded factual allegation that Midland failed to receive consent from the Directing Certificateholder does not influence Wells Fargo's legal authority to sue, defendants' affirmative defense, counterclaim and third-party complaint must be dismissed to the extent those claims are premised on Midland's failure to comply with the consent and authorization provisions of the PSA.

///

///

///

-13-

**CONCLUSION**

For the foregoing reasons, I GRANT IN PART Wells Fargo, Bank of America, and

Midland's Motion to Strike (#139) with respect to the allegations that Wells Fargo lacks authority

to bring this foreclosure action.

IT IS SO ORDERED.

DATED this  14th  day of April, 2010.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

-14-